## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ERICKA BANKS,**
**individually and on behalf of**
**all others similarly situated**

**CIVIL ACTION**

**VERSUS**

**NO.  NO. 19-375-JWD-EWD**

**KOTTEMANN LAW FIRM**

### CONSOLIDATED WITH

**SHELITA KING,**
**individually and on behalf of**
**all others similarly situated**

**CIVIL ACTION**

**VERSUS**

**NO. 20-340-JWD-EWD**

**KOTTEMANN LAW FIRM, ET AL.**

### RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss* (Doc. 8) filed by Defendants Kottemann Law Firm and Stanley Kottemann, Jr. (collectively "Defendants").  Plaintiff Shelita King ("Plaintiff") opposes the motion. (Doc. 10.)  Defendants filed a reply. (Doc. 15.)  Both parties filed supplemental notices of authority. (*See Banks*, No. 19-375, Docs. 45, 46.) Oral argument is not necessary.  The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted in part and denied in part.

I.    **Background**

    **A.  Relevant Facts**

This is a putative class action brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Defendants are: (1) Kottemann Law Firm, a Louisiana

company that uses mail, telephone, or facsimile in a business, the principal purpose of which is the collection of debts; and (2) Stanley Kottemann, Jr., an attorney whom it employs. (*Compl.* ¶¶ 9–10, Doc. 1.) Plaintiff is a Louisiana resident (*id.* ¶ 7) who allegedly incurred an obligation to Baton Rouge Cardiology arising out of medical services she received. (*Id.* ¶¶ 14–16; Doc. 10 at 8.) Thereafter, Baton Rouge Cardiology "or a purchaser, assignee, or subsequent creditor" contracted with Defendants to collect on the alleged debt owed. (*Compl.* ¶ 18, Doc. 1.) In connection with this debt, on June 5, 2019, Defendants sent Plaintiff a collection letter which is the subject of the present case. (*Id.* ¶ 20.) The letter provides as follows:

> Re: Baton Rouge Cardiology
> Account Number: XXX5390
> Total Amount Owed: $871.00

Dear Shelita King:

Our Firm has been retained to assist in the collection of the above referenced debt owed by you. This debt is delinquent and there is no indications that you have made payment arrangements to resolve this matter or that you dispute the validity of the debt. Payment in full should be made to:

> **Kottemann Law Firm**
> **PO Box 640787**
> **Kenner, LA 70064-0787**

Formal demand is hereby made upon you for immediate payment of the total indebtedness. Baton Rouge Cardiology is the original creditor for this debt. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from reciving this notice, this office will obtain verification of the debt or obtain a copy of a judgment (if applicable) and mail you a copy of such judgment or verification. If you request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. If the amount owed is not paid with in [sic] 30 days then the amount due will be owed plus reasonable attorney fees of 25% of principal and interest.

(Doc. 1-2 at 1, the "Letter".)[1]

Plaintiff claims that the Letter violates various provisions of the FDCPA, which Congress enacted "in response to the 'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors[]' " (*Compl.* ¶ 1, Doc. 1 (quoting 15 U.S.C. § 1692(a))) to "eliminate abusive debt collection practices [and] to 'insure that those debt collectors who refrain from using abusive debt collection practices are not completely disadvantaged.' " (*Id.* ¶ 2 (quoting 15 U.S.C. § 1692(e)).) Plaintiff maintains that Defendants' actions, including the contents of the Letter, "are part of a pattern and practice used to collect consumer debts." (*Id.* ¶ 38.)

### B. Class Claims

Plaintiff seeks to represent the following classes of individuals:

Class A consists of (a) all individuals nationwide (b) to whom Defendants (c) sent an initial collection letter attempting to collect a consumer debt (d) containing language following the validation notice: "If the amount owed is not paid with in [sic] 30 days then the amount due will be owed plus reasonable attorney fees of 25% of principal and interest" (e) which letter was sent on or after a date one year prior to the filing of this action and on or before a date 21 days after the filing of this action.

Class B consists of (a) all individuals nationwide (b) to whom Defendants (c) sent an initial collection letter attempting to collect a consumer debt owed to Baton Rouge Cardiology (d) containing language following the validation notice: "If the amount owed is not paid with in [sic] 30 days then the amount due will be owed plus reasonable attorney fees of 25% of principal and interest" (e) which letter was sent on or after a date one year prior to the filing of this action and on or before a date 21 days after the filing of this action.

Class C consists of (a) all individuals nationwide (b) to whom Defendants (c) sent an initial collection letter attempting to collect a consumer debt owed (d) that failed to state who the current creditor to whom the debt was allegedly owed is (e) which letter was sent on or after a date one year prior to the filing of this action and on or before a date 21 days after the filing of this action.

---

[1] The Court notes that consideration of the Letter is proper given that it is-referenced in and attached to the *Complaint*. It is also central to Plaintiff's claims.

(*Compl.* ¶ 39, Doc. 1.) The *Complaint* also sets out facts in support of numerosity, commonality, typicality, and adequacy for the plaintiff class. (*Id.* ¶¶ 40–47.)

### C.  Claims and Prayer for Relief

In her complaint, Plaintiff alleges that Defendants violated three provisions of the FDPCA: first, 15 U.S.C. § 1692(e) by falsely representing the amount of the debt, threatening to take action that cannot legally be taken or that is not intended to be taken, and using false, deceptive and misleading representations in connection with the collection of a debt, (*id.* ¶¶ 48–52); second, 15 U.S.C. § 1692(f) by attempting to collect an amount not expressly authorized by the agreement creating the debt or permitted by law, (*id.* ¶¶ 53–57); and finally, 15 U.S.C. § 1692(g) by failing to clearly identify the current creditor to whom the debt was owed and overshadowing the validation notice (*id.* ¶¶ 58–61).

Plaintiff seeks, *inter alia*, declaratory and injunctive relief, actual and statutory damages, attorney's fees, and any other relief this Court "may deem just and proper." (*Id.* ¶ 6; *see also* Doc. 1 at 11.)

### D.  Procedural History

On June 5, 2020, Plaintiff filed her class action *Complaint* against Defendants. (Doc. 1.) On August 28, 2020, Defendants filed their *Motion to Dismiss* under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 8.) On that same day, Defendants also filed a *Motion to Transfer and Consolidate* with the *Banks* case, No. 19-375. (Doc. 9.) Subsequently, on November 30, 2020, Defendants' motion was granted, and this case was transferred to this Court and consolidated with the prior filed *Banks*. (Doc. 19.) As Judge Jackson explained in his Ruling and Order on the *Motion to Transfer and Consolidate*, "both actions [were] filed on behalf of Louisiana consumers under the [FDCPA]. Both actions involve the same attorneys, the same Defendants,

functionally the same claims, a request for class certification, and call for the same relief."[2]  (Doc.

19 at 1–2.)

## II.    Relevant Standards

### A.  Rule 12(b)(1) Standard

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States,* 899 F. Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). . . .

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B.  Rule 12(b)(6) Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the

pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a

---

[2] In *Banks*, only Kottemann Law Firm is named as a defendant; however, in this case, both Kottemann Law Firm and Stanley Kottemann are named as defendants.

complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the Defendants is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the Defendants be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03

(5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id.* at 503.

## III.   Parties' Arguments

### A. Defendants' Original Memorandum (Doc. 8-1)

Defendants seek dismissal of Plaintiff's claims under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. 8-1 at 1.)

### 1. Lack of Standing

Defendants first argue that Plaintiff lacks standing because she failed to allege how she suffered any concrete, particularized, or actual injury. (Doc. 8-1 at 2.) They note:

> Plaintiff does not allege that she paid her debt or did anything else in response to Kottemann's letter or even that she wasted time or money in determining whether to do so. Instead, the Complaint merely asserts that the letter creates a risk that unsophisticated borrowers might make payments on a debt after receiving such letters. Elsewhere, Plaintiff asserts only intangible injuries, in the form of conclusory alleged violations of the FDCPA.

(*Id*. at 4.)

According to Defendants, such intangible injuries do not establish standing, even under *Spokeo*, because Plaintiff seeks to recover for misleading or unfair representations without alleging that she relied on those representations, much less that they caused her any damages.[3] (*Id.* at 5 (citing *Spokeo Inc., v. Robins*, 136 S. Ct. 1540, 1549).) "By jettisoning the bedrock elements of reliance and damages, the Plaintiff asserts claims with no relationship to harms traditionally remediable in American jurisprudence, and thus undermines her threshold basis of Article III standing." (*Id.* at 5–6.)

---

[3] Defendants appear to equate Plaintiff's claim to a "traditionally recognized" claim of detrimental reliance.

Defendants also claim that Congress exercised its judgment in choosing not to elevate a violation of the FDCPA to an intangible harm that would confer Article III standing. (*Id*. at 6.)

> The FDCPA's statutory findings contain one sentence identifying the harms against which the statute is directed: "Abusive debt collection practices contribute to [a] number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). These serious harms are a far cry from whatever injury one may suffer from receiving in the mail a misleading communication that fails to mislead…. And while a recipient may take offense that a private party has violated the FDCPA, that is akin to taking offense that the government has violated other statutes—an injury that is canonically abstract as opposed to concrete.

(*Id.*)

According to Defendants, the FDCPA's private cause of action also "suggests that Congress viewed statutory damages not as an independent font of standing for plaintiffs without traditional injuries, but as an 'additional' remedy for plaintiffs suffering 'actual damage' caused by a statutory violation." (*Id*. (citing 15 U.S.C. § 1692(k)(a) (a person may recover "any actual damage sustained by such person as a result of" an FDCPA violation and "such additional damages as the court may allow.")).) In sum, "no congressional judgment [is] firm enough to break with centuries of tradition indicating that misrepresentations are not actionable absent reliance and ensuing damages." (*Id.* at 7.)

Finally, Defendants argue that Plaintiff lacks standing based on her "risk and informational injuries" for two reasons. (*Id*.) First, Plaintiff does not allege that the Letter posed any risk of harm to her. Defendants contend that "Plaintiff cannot prove standing merely by alleging risks posed to consumers other than herself." (*Id.* at 7–8 (citing *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329, 336 n.3 (7th Cir. 2019)).) In support of this contention, Defendants cite to *Frank v. Autovest, LLC*, 2020 WL 3053199, at *2 (D.C. Cir. 2020), in which the court "held that the plaintiff lacked standing because the false affidavits did not mislead or otherwise injure the plaintiff." (*Id.* at 8.)  The court noted that "it made no difference that the affidavits might have misled a

hypothetical unsophisticated debtor" because the plaintiff failed to allege that he personally suffered an injury. (*Id*. at 8–9.)

Likewise, in *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020), the Eleventh Circuit held that the plaintiffs lacked standing because "while they sought 'to recover for representations that they contend[ed] were misleading or unfair,' they did so 'without [even proving] that they relied on the representations, much less that the reliance caused them any damages.' " (*Id*. at 9.) Like the plaintiffs in these cases, Plaintiff in this case failed to allege a personal and particularized injury sufficient to confer standing.[4] (*Id*.)

Second, to the extent that Plaintiff was at risk of suffering a concrete harm, that risk had "entirely dissipated" before she filed the Complaint. (*Id.* at 9.) Defendants argue:

> Even if Plaintiff was placed at risk of being defrauded when she received the collection letter, the risk never materialized, had dissipated before the complaint was filed, and cannot possibly threaten any future concrete injury. For this additional reason, Plaintiff cannot individually show Article III standing based on a risk of injury.

(*Id.* at 10.)

Accordingly, Defendants insist that Plaintiff has not adequately alleged an injury sufficient to confer Article III standing, either individually or on behalf of a putative class. (*Id*. at 10–12.)

### 2. Failure to State a Claim

Defendants then argue that even if Plaintiff has standing, her Complaint is nevertheless subject to dismissal under Rule 12(b)(6) for failure to state any viable claims. (Doc. 8-1 at 14.) Defendants first argue that the Complaint does not state a viable "overshadowing" claim under §

---

[4] Defendants acknowledge that not all circuits agree, but urges this Court to adopt the viewpoint of the Seventh, Eleventh, and D.C. Circuits rather than the Second and Sixth Circuits. (Doc. 8-1 at 9 n.2 (explaining that in *Macy v. GC Services Ltd. Partnership*, 897 F.3d 747, 758–59 (6th Cir. 2018), the Sixth Circuit found standing based on the increased forfeiture risk to consumers in general, without any showing that the failure to provide notice placed the plaintiffs at greater risk. Likewise, in *Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 80–82 (2d Cir. 2018), the Second Circuit found standing based only on a risk of harm, even though the plaintiff never alleged that the communication at issue might have affected him personally.).)

1692g(b) because the Letter does not: (1) contain any large, attention-grabbing type, (2) relegate the validation notice to fine or otherwise hard to read print, or (3) demand payment "in a concrete period shorter than the 30-day statutory contest period." (*Id*. at 15 (citing *Peter v. GC Servs. L.P.*, 310 F.3d 344, 350 (5th Cir. 2002) (finding that the letter did not violate § 1692g because it did not demand payment within less than 30-days)).)

Defendants further contend that a demand "for payment coupled with a statement of the consequences if payment is not received [within] 30-days is not a demand for 'immediate payment' or 'payment in a definite period shorter than 30 days.' " (*Id*. (quoting *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 670 (5th Cir. 2012)).)   Thus, the Letter did not violate § 1692g(b) of the FDCPA.

Defendants also argue that Plaintiff's demand for declaratory and injunctive relief is "futile" because equitable relief is not available to private litigants under the FDCPA. (*Id*. at 16.) Defendants admit that the Fifth Circuit has not directly addressed this issue, but avers that district courts within the Fifth Circuit have specifically denied class certification for injunctive relief under the FDCPA, as the FDCPA does not provide for equitable remedies. (*Id*. at 16–17 n.9 (citing *Goode v. Adler Wallach Associates Inc.*, 2017 WL 3437900, at *3 (E.D. Tex. Aug. 10, 2017); *Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc*., 2014 WL 7330602, at *3 (E.D. La. Dec. 18, 2014); *Sibley v. Diversified Collection Servs., Inc*., 1998 WL 355492, at *5 (N.D. Tex. June 30, 1998)).)

Defendants further note that other courts have determined that even if the FDCPA provided for equitable relief, such remedies are not available to private litigants. (*Id*. at 17 n.9 (citing *Goldberg v. Winston & Morrone, P.C.*, 1997 WL 139526, at *3 (S.D. N.Y. 1997); *Gammon v. GC Servs. Ltd. Partnership*, 162 F.R.D. 313, 319 (N.D. Ill. 1995) (collecting cases); *Sibley v. Fulton*

*DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982)).) Thus, even if equitable relief was available under the FDCPA, it would not be available to Plaintiff in this case, as a private litigant.

Second, Defendants argue that the Letter does not violate § 1692(e) and § 1692(f) because it does not make a "false, deceptive, or misleading representation" nor does it attempt "to collect an amount not expressly authorized by agreement or permitted by law." (*Id.* at 17 (quoting 15 U.S.C. §§1692(e) & (f)).) Although the Letter includes a clause that says "If the amount owed is not paid with in [sic] 30 days then the amount due will be owed plus reasonable attorney fees of 25% of principal and interest," this does not run afoul of the FDCPA since the collection of attorney's fees is authorized under Louisiana law. (*Id.* at 18 (citing *Compl.* ¶ 56, Doc. 1).) Specifically, Defendants rely on La. R.S. 9:2781, which authorizes the imposition of attorney's fees if an open account is not paid within 30 days of demand. (*Id.* at 17–18.) Defendants thus reason that because the imposition of attorney's fees is authorized by statute, and because the Letter "correctly states the amount customarily 'permitted by law,' in Louisiana open account actions," they are not attempting to collect an unauthorized amount in violation of § 1692(f). (*Id.* at 18.)

Finally, Defendants argue that the Letter does not violate § 1692(g) because it does not "overshadow" anything by "failing to clearly identify the current creditor." (*Id* at 15 (citing *Compl.* ¶ 60, Doc. 1).) According to Defendants, the Letter clearly identifies Baton Rouge Cardiology "as the only creditor (and thus the creditor to whom the debt is owed)." (*Id.* at 21.) "The Complaint's unfounded speculation . . . is directly contradicted by the Letter's unambiguous wording." (*Id.* at 19.) "Nothing in the Letter says anything about another purchaser, assignee, or subsequent creditor . . ." (*Id.*) In support, they cite to *Zuniga v. Asset Recovery Sols.*, No. 17-5119, 2018 WL 1519162, at *4 (N.D. Ill. Mar. 28, 2018), in which the plaintiff failed to state a viable § 1692(g) claim based

on a letter that "plainly identified the entity to whom the debt was owed by using the words 'Current Creditor.' " (*Id*. at 20, n.5.) The court noted that "there [were] no confusingly named non-creditors sprinkled about the letter to muddy the waters, and no opaque technical terms." (*Id*.)

In sum, Defendants aver that Plaintiff has suffered no concrete injury, and thus lacks Article III standing to sue, and even if she had such standing, she has failed to state a claim upon which relief can be granted. (*Id*. at 21.) Accordingly, they insist her claims must be dismissed.

### B. Plaintiff's Opposition (Doc. 10)

#### 1. Plaintiff has Standing

In opposition, Plaintiff argues that she "clearly has standing to seek redress in federal court for the Defendant[s'] rampant violations of her substantive rights under the FDCPA." (Doc. 10 at 22.) She insists that the Supreme Court's decision in *Spokeo* "made no new holdings," but instead, merely re-affirmed "the nearly 50-year-old rule that an Article III injury must be 'concrete and particularized.' " (*Id.*)

Plaintiff notes that although tangible injuries are easier to recognize, intangible injuries and injuries based on a "risk of harm", can be concrete too. "In determining whether an intangible harm constitutes injury in fact . . . both history and the judgment of Congress play important roles." (*Id.* at 23 (quoting *Spokeo*, 136 S. Ct. at 1549).) Unlike Defendants, who focus their argument on harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts, Plaintiff emphasizes the importance of Congressional intent. "Congress has the power to define injuries and articulate claims of causation that will give rise to a case or controversy where none existed before." (*Id.* (quoting *Spokeo*, at 1549) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580, 112 S. Ct. 2130 (1992))).) In support thereof, Plaintiff cites to *Havens Realty Corp v. Coleman*, 455 U.S. 363, 373–74, 102 S. Ct. 1114 (1982), wherein the Court found that the plaintiff

had suffered an injury in fact due to a violation of the Fair Housing Act, even though she "had no intention of doing business with the defendant, and interacted with the defendant fully expecting it to violate her rights." (*Id*. at 24 (emphasis omitted).)

With respect to violations of the FDCPA, Plaintiff argues that Article III standing is present since her injury is one that Congress elevated to the status of a legally cognizable, concrete injury. (*Id.* at 26 (citing *Church v. Accretive Health, Inc.*, No. 15-15708, 654 F. App'x 990 (11th Cir. 2016)).) Specifically, Plaintiff was harmed when she received Defendants' Letter which allegedly violated the FDCPA in various ways, including that it failed to provide Plaintiff with crucial information about (1) the identity of the creditor who currently owned the debt, (2) the amount of her debt, and (3) her rights to dispute her debt. (*Id*. at 27.) Plaintiff argues that these are the exact harms that Congress intended to prevent when enacting the FDCPA. (*Id*. (citing *Zirogiannis v. Seterus, Inc.,* 707 F. App'x 724, 727 (2d Cir. 2017)).) Further, the FDCPA was implemented to protect "essentially the same interests traditionally protected at common law. There can be no doubt that the common law has long reflected an interest in avoiding the harms inherent to receiving misleading information." (*Id.* (quoting *Cunningham v. Credit Bureau of Lancaster Cty., Inc.*, No. 17-5102, 2018 WL 6062351, at *6 (E.D. Pa. Nov. 20, 2018)).)

Plaintiff cites a litany of cases in which courts have found that plaintiffs alleging similar FDCPA violations had standing to bring such claims. (*Id*. at 30–32.)  Plaintiff also points to *McLain v. Head Mercantile Co.*, No. 16-780, 2017 WL 3710073 (M.D. La. Aug. 28, 2017) (deGravelles, J.) and *Reed v. Receivable Recovery Servs., LLC*, No. 16-12666, 2017 WL 1399597 (E.D. La. Apr. 19, 2017), both of which considered the *Spokeo* decision and found that plaintiffs nevertheless had standing to bring similar claims under the FDCPA. (*Id*. at 28–29.)

## 2. Plaintiff States Viable FDCPA Claims

Plaintiff then argues that there is "no question" in this case that she has adequately alleged several violations of the FDCPA. (Doc. 10 at 10.) Plaintiff first maintains that Defendants violated Section 1692g(a)(2)'s requirement—to unambiguously identify the creditor to whom the debt is currently owed—by identifying Baton Rouge Cardiology as the original creditor. (*Id.* at 12.) Plaintiff argues:

> there is absolutely nothing in the body of the Defendant[s'] boilerplate Collection Letter which would give any indication as to (1) who currently owned the debt originally incurred to Baton Rouge Cardiology, (2) whether the Defendant[s were] retained by any such creditor, or (3) what Defendant[s'] relationship with Baton Rouge Cardiology was. In other words, the Collection Letter identified *the debt* that the Defendant[s were] trying to collect (i.e., a bill owed for services provided at Baton Rouge Cardiology) but it did not identify *the creditor to whom that debt was currently owed*.

(*Id.* (emphasis by Plaintiff).)

Plaintiff points out that "a growing number of courts nationwide have already considered identical collection letters, and have found them to be in violation of the FDCPA." (*Id.*) In support of this, Plaintiff cites to *Datiz v. Int'l Recovery Assoc., Inc.*, 2016 WL 4148330 (E.D.N.Y. Aug. 4, 2016), which she contends is factually identical to the case at hand. (*Id.* at 13–14.) In *Datiz*, the court found that a caption containing the name of the creditor " 'is not, without more explanation, sufficient to satisfy Section 1692g(a)(2) because it does not identify the Hospital as the Plaintiff's current creditor.' " (*Id.* (quoting *Datiz* at *11).) The court went on to explain that this error was not rectified in the body of the collection letter since it did not make clear who the debt collector was acting on behalf of in attempting to collect the debt nor did it specify who the debt collector represented. (*Id.* (citing *Datiz* at *11–12).) For the same reasons, Plaintiff contends that the Letter at issue in this case violates § 1692(g). (*Id.* at 14–15.)

Plaintiff also cites to *Anderson v. Ray Klein, Inc.,* 2019 WL 1568399 (E.D. Mich. Apr. 10, 2019). In that case, the court found that the debt collection letter did not make it "abundantly clear" that the debt was still owed to the original creditor. (*Id*. at 15 (citing *Anderson* at \*2).) "By referencing an 'original' creditor as opposed to a 'current creditor,' … a consumer therefore might assume that there was, or is, a creditor subsequent to the original." (*Id.* (quoting *Anderson* at \*3).) Thus, Plaintiff concludes that she has sufficiently stated a claim under § 1692g(a)(2) for Defendants' failure to identify the current creditor clearly and unambiguously. (*Id*. at 16.)

Next, she argues that she has sufficiently stated a claim based on Defendants false threat that they would automatically add a 25% attorney fee to her debt if it was not paid within 30 days. (Doc. 10 at 17.) Specifically, Plaintiff contends that Defendants violated the following two provisions of the FDCPA: Section 1692(e) which prohibits the use of false and misleading collection tactics and 1692(f) which prohibits "the attempt to collect any amount, unless that amount is (1) expressly authorized by the agreement creating the debt, or (2) expressly authorized by state law." (*Id.*)

Plaintiff points out that Defendants do not claim that the agreement creating the debt authorizes the imposition of attorney's fees and interest. (*Id.*) Rather, they claim that the Louisiana open account statute, La. R.S. 9:2718, permits the imposition of attorney's fees upon a debtor's failure to pay a debt within 30 days, and thus a demand for same is in accord with § 1692f(1). Plaintiff, however, argues that La. R.S. 9:2781 allows such an imposition only after judgment on the claim is rendered in favor of the claimant. (*Id*. at 17.) Here, no such judgment has been rendered nor has a collection lawsuit been filed against Plaintiff. (*Id.*) For Defendants to increase Plaintiff's balance by $217.75 would require Defendants to first (1) sue Plaintiff; and (2) obtain such an award at final judgment. (*Id.* at 18.) Therefore, because Defendants attempt to collect an amount

not yet due, their "reliance on Louisiana's 'open account' provisions cannot help [them] avoid liability for [their] violations of the FDCPA here." (*Id.*)

Finally, Plaintiff argues that she has sufficiently stated an overshadowing claim under § 1692(g). That section of the FDCPA requires that a debt collector not "overshadow" the 30-day validation notice with other messages in a collection letter and not suggest that the effect of disputing the debt is less effective than it really is. (*Id.* at 19.)   Here, Plaintiff contends that Defendants violated both of these provisions. First, Plaintiff claims that Defendants' "overshadowed" the 30-day validation notice by stating in the "very next sentence" that she would automatically owe an additional $217.75 if she did not pay her debt within 30 days. (*Id.*) According to Plaintiff, this language deprived her of the opportunity to "take advantage of her rights to dispute the debt, if that meant her debt would automatically jump by an extra 25% anyway[.]" (*Id.*)

Further, Plaintiff argues that the Letter unlawfully shortened the 30-day validation period and overshadowed the timing provisions of the validation notice. (*Id.* at 19–20.) By demanding payment "with in [sic] 30 days", the Letter implies "that payment needed to be within 30 days of the date of the Validation Notice, which is several days shorter than the 30-day Validation period." (*Id.* at 19.)  Additionally, by stating that the debt had to be paid within 30 days, Defendants violated the FDCPA, which provides that a consumer need only mail a notice of dispute within that timeframe. (*Id.* at 20.) Thus, to "avoid the imminent 25% debt increase, Ms. King would have had to mail in her payment several days before the time to dispute her debt actually expired, thereby contradicting that deadline." (*Id.* at 20.)

Lastly, the Letter makes it appear that the effect of disputing the debt would not be effective in stopping the debt from immediately increasing by over $200 because the Letter is "designed to appear as if Ms. King will automatically owe that increased balance if her payment was not made

within 30 days, regardless of what Ms. King did with her dispute." (*Id.* at 21.) Thus, Plaintiff concludes that the Letter "plainly violates Section 1692g(b) of the FDCPA[.]" (*Id.*)

### C.  Defendants' Reply (Doc. 15)

Defendants re-urge many of the arguments and supporting authorities included in their original memorandum.[5] Specifically, in support of their argument that Plaintiff lacks standing, they cite again: *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1619 (2020), where the Supreme Court re-emphasized, that a violation of a statutory right does not constitute an injury-in-fact giving rise to standing; *Trichell v. Midland Credit Mgmt., Inc.,* 964 F.3d 990, 998 (11th Cir. 2020), where the Eleventh Circuit found that the plaintiffs lacked standing because they failed to prove that they relied on the alleged misleading representations, much less that the reliance caused them any damages; and *Frank v. Autovest, LLC*, 961 F.3d 1185, 1190 (D.C. Cir. 2020), in which the court "held that the plaintiff lacked standing because the false affidavits did not mislead or otherwise injure the plaintiff." (Doc. 15 at 2–5, 9–11.)

They also cite to *Cooper v. Atl. Credit & Fin. Inc*, 822 F. App'x 951 (11th Cir. 2020), which they argue "is on all fours with the case before this Court."  (Doc. 15 at 3.) Much like *Trichell*, the Eleventh Circuit found that the plaintiff in *Cooper* lacked standing because he failed to allege that he suffered any concrete or particularized injury. *Cooper*, 822 F. App'x at 954; *see also*, *Hill v. Resurgent Capital Servs., LP*, No. 20-20563, 2020 WL 4429254, at *3 (S.D. Fla. July 31, 2020) (The *Hill* complaint likewise failed the "particularized injury" claim because "instead of claiming that she was at risk of having to contest the allegedly false proof of claim, she writes only

---

[5] The Court notes that Defendants appear to have altered their interpretation of *Spokeo*. Defendants originally argued that under certain situations, "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." (Doc. 8-1 at 4–5.) However, such an "intangible injury [must] bear a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" (*Id.* at 5 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).) They now argue that "[t]o get in the courthouse, you have to first show that you were specifically hurt in a tangible manner." (Doc. 15 at 4.) This directly contradicts their earlier arguments under *Spokeo* that an intangible injury may nevertheless give rise to a concrete harm.

that 'unsophisticated consumers,' if placed in her position, would have been forced to 'use their limited resources to object to unsupported claims.' Without alleging personal injury, her claim fails on its face." (*Id.* (emphasis omitted).)

> Applying the reasoning of the cases above to the case at hand, they argue:
>
> King does not allege any particularized injury; she simply does not say she was affected in any meaningful way by the letter. See *Cooper* 2020 WL 4332410, at *4. All King's Complaint says, at most, is that she was confused, but in this context, her asserted entry of confusion was "conjectural" or "hypothetical," because she has not alleged any actual harms that arose from her confusion. Without more, this asserted injury is insufficient to confer standing.

(Doc. 15 at 6.) Defendants further argue that the vast majority of cases cited by Plaintiff predate *Thole*, are not binding on this Court, or are "simply irrelevant and no longer good law."[6] (*Id.* at 7.)

### D. Defendants' Notice of Supplemental Authority (Doc. 45)

On February 17, 2021, Defendants filed a *Notice of Supplemental Authority* (No. 19-375, Doc. 45), providing additional cases from the Seventh and Ninth Circuits in support of their position. "These four cases dismiss similar FDCPA cases based on a failure of the plaintiffs to allege sufficient injury to establish Article III standing." (*Id.* at 1 (citing *Adams v. Skagit Bonded Collectors, LLC*, No. 20-35158, 836 F. App'x 544 (9th Cir. 2020) (finding that plaintiff had not alleged actual harm or a material risk of harm to the interests protected by the FDCPA); *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020) (finding lack of standing where consumer did not allege the statutory violations harmed her in any way or created any appreciable risk of harm to her); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020)

---

[6] For example, they distinguish *McLain* on the grounds that it has "nothing to do with the subject matter of this case because there are no allegations that Plaintiff was asked to pay a 'convenience fee' or that Kottemann used a law firm name other than one of his firm's actual registered name in Louisiana." (Doc. 15 at 8.) They also note that *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016), "has been abandoned, if not overruled explicitly, by *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016)." (Doc. 15 at 7.) Moreover, as *Trichell* points out, *Church* has been expressly rejected by the D.C. Circuit in *Frank* and by the Seventh Circuit in *Casillas*. (*Id*.)

(finding lack of standing where debtors did not pay anything in response to the challenged sentence in the letter, the sentence did not reduce the debtor's credit rating, and it did not affect any ownership interest in the property); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020) (standing cannot be waived).)

### E.  Plaintiff's Response to Defendants' Supplemental Authority (Doc. 46)

On March 3, 2021, Plaintiff filed a *Response to Defendant's Supplemental Authority*. (No. 19-375, Doc. 46.) Plaintiff argues that the four cases cited by Defendants "do not change the fact that the Plaintiff[] ha[s] Article III standing to bring this action." (Doc. 46 at 2.) Plaintiff again directs the Court to its prior decision in *McLain*, wherein this Court found that the plaintiff had standing to sue based on alleged violations of § 1692f and § 1692g, which are also at issue here. (*Id*.)

Plaintiff also cites to three recent cases within the Fifth Circuit which demonstrate that the Fifth Circuit's position, as articulated by this Court in *McLain,* has not changed: *Flecha v. Medicredit, Inc.*, 946 F.3d 762 (5th Cir. 2020) (finding standing for class representative, although "the putative class inevitably includes people who received the letter, but ignored it as junk mail or otherwise gave it no meaningful attention—and therefore lack a cognizable injury under Article III"); *Salermo v. Hughes Watters & Askansae LLP*, No. 19-2791, 2021 WL 293311, at *9 (S.D. Tex. Jan. 28, 2021) (Plaintiff "experienced the harm attendant to her right provided by Congress to be free from 'false, deceptive, or misleading representation or means in connection with the collection of any debt.' Her alleged injury is thus sufficiently concrete to confer Article III standing."); and *Ngo v. NPAS, Inc.*, No. 20-566, 2021 WL 149121, at *4 (E.D. La. Jan. 15, 2021) ("[P]laintiff brings claims under provisions of the FDCPA for which Courts have found an alleged violation gives rise to a concrete injury . . . the claimed harassment and need to retain legal counsel

here are 'connected' to NPAS's . . . repeated attempts to collect on the medical debt. For these reasons, the Court finds that plaintiff has shown an actual injury as required by Article III.") Like the plaintiffs in the above cited cases, Plaintiff's Complaint in this case "expressly allege[s] the measurable risk of harm that comes from falsely threatening debtors that their debts will increase by hundreds of dollars if they do not immediately pay their debts." (*Id*. at 5–6 (citing *Compl.* ¶¶ 24, 29, Doc. 1).) The cases cited by Defendants do not change this.[7] (*Id*. at 5–7.)

## IV.   Discussion

### A.   Article III Standing

The issue of standing presents a "threshold jurisdictional question" in any suit filed in federal district court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The requirement that a party have standing to bring suit flows from Article III of the Constitution, which limits the scope of the federal judicial power to the adjudication of "cases" or "controversies." U.S. Const. art. III, § 2. Standing consists of three elements: (1) the plaintiff must have suffered an "injury-in-fact," which is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent"; (2) the injury must be "fairly traceable" to the challenged conduct of the defendant; and (3) it must be likely that plaintiff's injury will be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing each element of standing. *Id.*

---

[7] For example, the *Skagit* court flatly rejected the notion that the failure to provide consumers with information they are statutorily entitled to receive is a concrete informational harm. *See Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544, 546 n.2 (9th Cir. 2020) ("We reject Adams's theory that he has alleged an informational injury that should be treated as substantive."). Thus, Plaintiff contends that this decision is directly at odds with that of the Second Circuit, the Eleventh Circuit, and this very Court. (Doc. 46 at 7.) Further, *Nettles* and *Larkin* are distinguishable in that the plaintiffs in those cases did not attempt to articulate any risk of harm that resulted from receiving the offending collection letters. Similarly, in *Gunn*, the plaintiff only alleged that the debt collector's actions "annoyed" him. (*Id*. at 5.)

Defendants seek to dismiss Plaintiff's claims on the ground that she has not suffered an injury in fact sufficient to confer Article III standing in light of *Spokeo*. As this Court explained in *McLain v. Head Mercantile Co., Inc.*:

> [I]t is important to note that *Spokeo* did not rule on what does or does not constitute a concrete injury, even in the context of the FCRA; it simply held that to have standing, a plaintiff must allege an injury that is both concrete and particularized. 136 S. Ct. at 1548. To that end, a "particular" injury is one that "affect[s] the plaintiff in a personal and individual way" and the "concrete" requirement requires the injury to be "de facto," in other words, it must actually exist, and not be hypothetical or conjectural. *Id.* at 1548. Nonetheless, "concrete" is not "necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize [the Court has] confirmed in many [ ] previous cases that intangible injuries can nevertheless be concrete." *Id.* at 1549 (citing *Pleasant Grove City v. Summum,* 555 U.S. 460 (2009); *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520 (1993)).

> Furthermore, *Spokeo* held that a plaintiff must allege a concrete and particularized injury that goes beyond a "bare procedural violation, divorced from any concrete harm" *in the context of the FCRA* because a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. This is particularly important to the issue before the Court because the FCRA significantly differs from the FDCPA in ways that make a meaningful difference in whether a bare procedural violation of the statute—without more—gives rise to a "concrete" injury.[8] In spite of its language limiting the instances in which a procedural violation could constitute a concrete injury, even *Spokeo* recognized that such violation of a procedural right granted by statute "can be sufficient in some circumstances to constitute injury in fact" and in such instances, "a plaintiff need not allege any *additional* harm beyond the one identified by Congress." 136 S. Ct. at 1544 (emphasis original); *see also LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1143 (D.N.M. 2016) (discussing *Spokeo*).

---

[8] As summarized by the Western District, it is important to understand why certain elements of *Spokeo* do not necessarily translate well outside the context of the FCRA because:

> [i]n *Spokeo*, the Supreme Court observed that, by enacting the Fair Credit Reporting Act ("FCRA"), Congress clearly sought to curb the dissemination of false information by adopting procedures to decrease the risk. *Spokeo*, *supra*. However, a violation of one of the FCRA's procedural requirements may result in no harm. *Id.* The Court gave two examples: 1) a consumer agency that fails to provide required notice to a user, but the information is entirely accurate, and 2) a consumer reporting agency provides inaccurate information such as an incorrect zip code, that, without more, proves difficult to imagine how it could work any concrete harm. *Id.*

*Abercrombie v. Rogers, Carter & Payne, LLC*, No. 15-2214, 2016 WL 8201965, at *3 (W.D. La. Nov. 22, 2016).

The Fair Debt Collection Practices Act was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA is intended "to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

No. 16-780, 2017 WL 3710073, at *13–14 (M.D. La. Aug. 28, 2017) (deGravelles, J.).

Post-*Spokeo*, "[c]ourts across the country, including in the Fifth Circuit, have considered whether a violation of the FDCPA itself confers standing on a plaintiff, and they have answered that question in the affirmative." *Smith v. Moss Law Firm, P.C.*, No. 18-2449, 2020 WL 584617, at *4 (N.D. Tex. Feb. 6, 2020) (collecting cases); *see also Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017) (affirming district court's holding that plaintiff had standing to bring FDCPA claim because defendant's violation of 15 U.S.C. § 1692e(8) "exposed [plaintiff] to a real risk of financial harm caused by an inaccurate credit rating."); *Reed v. Receivable Recovery Servs., LLC*, No. 16-12666, 2017 WL 1399597, at *13 (E.D. La. Apr. 19, 2017) (finding Article III standing when a Plaintiff received collection letters allegedly in violation of the FDCPA); *Ngo v. NPAS, Inc.,* No. 20-566, 2021 WL 149121, at *4 (E.D. La. Jan. 15, 2021) ("By alleging violations of the rights created by [§§ 1692e and 1692g], plaintiff has satisfied the standard for concrete injury required by most courts."); *Masson v. Pioneer Credit Recovery, Inc*., No. 16-1887, 2017 WL 819099, at *3 (E.D. La. Mar. 2, 2017) (citing *Tourgeman v. Collins Fin. Servs.,* 755 F.3d 1109, 1116 (9th Cir. 2014) ("[T]he violation of [the] right not to be the target of misleading debt collection communications…constitutes a cognizable injury under Article III.")); *Ghanta v. Immediate Credit Recovery, Inc.*, No. 16-573, 2017 WL 1423597, at *4 (N.D. Tex. Apr. 18, 2017)

("In evaluating FDCPA claims post-*Spokeo*, courts have found that an alleged FDCPA violation is sufficient to confer standing because it establishes the consumer suffered the type of harm Congress intended to prevent—abusive debt collection practices."); *Kranz v. Midland Credit Mgmt. Inc.,* No. 18-169, 2020 WL 3899223, at *6 (W.D. Tex. July 10, 2020) ("Since *Spokeo*, courts have routinely found that FDCPA violations—*including procedural violations*—are sufficient to confer standing, even when no additional harm alleged aside from the statutory violation."); *Busby v. Vacation Resorts Int'l*, No. 18-4570, 2019 WL 669641, at *5 (S.D. Tex. Feb. 19, 2019) ("Most district courts in the Fifth Circuit have denied motions to dismiss based on insufficient allegations of injury in FDCPA cases.").[9] *But see Abercrombie v. Rogers, Carter & Payne, LLC*, No. 15-2214, 2016 WL 8201965, at *4–6 (W.D. La. Nov. 22, 2016) (finding no Article III injury for a claim arising out of an alleged misstatement of the debtor's rights under the FDCPA where the plaintiff never alleged that he could suffer harm as a result of the alleged misstatements). The Court finds the above cited cases to be persuasive.

As explained by the Eastern District,

> [a]lthough the Court may conceive of an instance in which an allegation of a bare violation of the FDCPA's procedural disclosure requirements may not support standing, [*see Abercrombie*, 2016 WL 8201965] where, as here, the plaintiff alleges that he has been victimized by harassment and false or misleading debt collection communications, he seeks to vindicate his substantive right to be free from debt collector abuse, which sufficiently alleges a concrete and particularized injury-in-fact. [Plaintiff]'s alleged injury is more than a bare procedural violation; it is the

---

[9] *See also Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp. 3d 656, 671 (D. N.J. 2017) ("Deprivation of the right to be free from false or deceptive debt collection information, with the attendant risk of economic injury, is an interest recognized by the [FDCPA], and one reasonably rooted in the traditions of the common law. Under *Spokeo*, it may give rise to Article III standing."); *Hayes v. Convergent Healthcare Recoveries, Inc.,* No. 14-1467, 2016 WL 5867818, at *4 (C.D. Ill. Oct. 7, 2016)("[A] violation of the right under § 1692e to be free from false or misleading representations from debt collectors creates a harm, or risk of harm, sufficient to meet the requirement of concreteness."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16-2021, 2016 WL 4264967, at *4 (N.D. Ill. Aug. 11, 2016)(citing cases rejecting challenges to standing based on Spokeo in FDCPA cases); *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1021 (E.D. Mo. 2015) ("The FDCPA is a broad remedial statute and its terms are to be applied in a 'liberal manner'"; to establish FDCPA violation, a plaintiff need only show: "(1) plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and (3) the defendant has engaged in a prohibited act[.]").

type of concrete injury Congress sought to eradicate in enacting the FDCPA. [Plaintiff] has Article III standing. [Defendant]'s motion to dismiss for lack of standing must be denied.

*McLain,* 2017 WL 3710073, at *15 (citing *Reed*, 2017 WL 1399597, at *6 (internal footnotes omitted)).

     Similarly, in *McLain*, this Court denied the defendant debt collector's motion to dismiss for lack of standing. *Id*. In *McLain*, the plaintiff alleged that she had been injured by receiving a debt collection letter that she alleged to be in violation of the FDCPA in two ways: (1) it was deceptive and misleading because it failed to clearly identify the sender; and (2) it charged a voluntary convenience fee in connection with one method of collection of payment when the collection of that payment was not authorized by law or contract. *Id*. This Court found these allegations to be sufficient to confer a concrete and particularized injury for the plaintiff to establish standing. *Id*. The Court explained: "When weighed against the backdrop of the legislative purpose of the FDCPA, it is clear that the harm alleged is the exact type of harm Congress intended to prevent." *Id*. The Court finds its prior Ruling in *McLain* represents a correct interpretation of the law.

     As in *McLain*, Plaintiff in this case alleges that she received a debt collection letter which violates the FDCPA in several respects: (1) it uses deceptive collection practices in that it attempts to collect attorney's fees, which are not authorized by contract or Louisiana law;   (2) it misrepresents the identify of her current creditor; and (3) it overshadows her statutory validation notice rights. Based on the above, Plaintiff has adequately alleged that her personal rights were violated when she received the collection letter. That comprised an injury attributable to Defendants' actions—an injury that will be redressed by an award of damages from this Court. No

more is needed to confirm Plaintiff's Article III standing. Accordingly, Plaintiff has standing to bring her claims, and, in that respect, Defendants' motion is denied.

### B. Failure to State a Claim

#### 1. General Principles

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). To establish a claim under the FDCPA, a plaintiff must show (1) that she was the object of collection activity arising from consumer debt, (2) Defendants are debt collectors as defined by the FDCPA, and (3) Defendants engaged in an act or omission prohibited by the FDCPA. *Mock v. Couch, Conville, & Blitt, LLC,* No. 20-594, 2021 WL 930291, at *3 (M.D. La. Feb. 23, 2021), *report and recommendation adopted sub nom. Mock v. Couch, Conville, & Blitt, LLC*, No. 20-594, 2021 WL 922061 (M.D. La. Mar. 10, 2021) (citing *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995)).

A violation of the FDCPA subjects a debt collector to liability for actual damages, additional damages up to $1,000, and incurred costs and attorneys' fees. 15 U.S.C. § 1692k(a). It is clear from the statute that Congress intended the FDCPA to have a broad remedial purpose. *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2017). For this reason, the FDCPA has been construed broadly and in favor of the consumer. *Id.*

In this case, there is no dispute that Plaintiff has been the object of collection activity arising from a consumer debt and that Defendants are a debt collector as defined by the FDCPA. The sole issue is whether Plaintiff has stated claims that Defendants violated 15 U.S.C. § 1692e by using "false, deceptive, or misleading representation[s] ... in connection with the collection of any debt"; § 1692f(1) by attempting to collect an amount not "authorized by the agreement creating the debt

or permitted by law"; § 1692g(a)(2) by failing to clearly identify the creditor to whom the debt is currently owed to; and § 1692g(b) by overshadowing "the disclosure of the consumer's right to dispute the debt[.]"

When evaluating a communication under 15 U.S.C. § 1692, courts "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004)). The Court must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Id.* "At the same time we do not consider the debtor as tied to the very last rung on the intelligence or sophistication ladder." *Goswami*, 377 F.3d at 495 (internal quotations and citation omitted). The purpose of this standard is to protect "all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices" and to protect "debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Gonzalez*, 577 F.3d at 603.

### 2. Use of False, Deceptive, or Misleading Representation to Collect an Amount Not Authorized by the Agreement or by Law

Plaintiff first argues that Defendants violated sections 1692e and 1692f of the FDCPA.

15 U.S.C. § 1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: …

(2) The false representation of—
   (A) the character, amount, or legal status of any debt…

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken…

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(2)(A), (5), (10).

"Section 1692e was enacted against a backdrop of cases in which courts held that communications designed to create a false sense of urgency were deceptive." *Peter v. GC Servs., LP,* 310 F.3d 344, 352 (5th Cir. 2002). "Post-FDCPA courts have read the language of § 1692e as encompassing this concern." *Id.* (citing *Rosa v. Gaynor*, 784 F. Supp. 1, 5 (D. Conn. 1989) (placing collection letter on attorney's letterhead deceptive where letter is not from attorney because it creates a false sense of urgency)).

Section 1692f states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The subsections provide a nonexclusive list of proscribed conduct under the statute, including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Plaintiff maintains that Defendants violated the above listed provisions by stating in the Letter that "If the amount owed is not paid [within] 30 days then the amount due *will be owed plus reasonable attorney fees of 25% of principal and interest*." (Doc. 1-2 at 1 (emphasis added).) According to Plaintiff, this statement is deceptive and misleading because it threatens to immediately add attorney's fees upon 30 days of non-payment, when such fees could only legally be added in the future, upon a judgment being entered against Plaintiff. (Doc. 10 at 17.) In contrast, Defendants contend that the Letter is not unlawful or misleading, but was sent to comply with the demand requirement of Louisiana's open account statute, La. R.S. 9:2781(A). (Doc. 15 at 9.)

The alleged debt incurred by Plaintiff was in the amount of $817.00, purportedly owed to Baton Rouge Cardiology for the provision of medical serves rendered to Plaintiff. (*Compl.* ¶¶ 14–

16, Doc. 1; Doc. 1-2 at 1.) Neither party contends Plaintiff obligated herself beyond this amount in any agreement between the parties. Therefore, the only way Defendants could lawfully collect 25% attorneys' fees is if it was authorized by Louisiana law.

"The open account law requires that the defendant pay the balance of an open account within thirty days of demand, or the defendant will be forced to pay attorney's fees *if the claimant is ultimately successful.*" *Breeden v. Lybrand*, 04-1340 (La. App. 4 Cir. 2/22/06); 927 So. 2d 451, 456 (emphasis added). The law does not permit attorney's fees to be collected unless and until "judgment on the claim is rendered in favor of the claimant." La. R.S. 9:2781. Here, "no judgment has been rendered . . . [n]or has a collection lawsuit ever been filed against Plaintiff." (Doc. 10 at 17.)

In *Veach v. Sheeks,* the Seventh Circuit explained that the debtor "cannot be held liable for treble damages, court costs, or attorney's fees [which were authorized by statute] *until* there has been a judgment by a court" and therefore, "they cannot be part of the 'remaining principal balance' of a claimed debt." 316 F.3d 690, 693 (7th Cir. 2003) (emphasis in original). The court further stated that the purpose of the "amount of debt" provision in the FDCPA is "to inform the debtor (who, remember, has a low level of sophistication) of what the *obligation* is, *not* what the final, worst-case scenario *could* be." *Id.* (emphasis in original). *See also Bernstein v. Howe,* 2003 WL 1702254, at *4–5 (S.D. Ind. Mar. 31, 2003) (collection letter stating that the amount owed was "$4,401.28 plus interest and attorney's fees" violated the FDCPA because no attorneys' fees (either contractual or statutory) were owed by the debtor at the time the letter was sent; rather, there was only "the potential for an award of attorney's fees in the future, in the event that the [debt collector] incurred attorney's fees as a result of pursuing legal proceedings against [the debtor].").

Because "[t]he FDCPA prohibits attempts to collect nonexistent debt, including attorney's fees[,]" *Jackson v. Sagal*, 370 F. Supp. 3d 592, 601 (D. Md. 2019) (citing *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d. 582, 591 (D. Md. 2019)), Plaintiff has stated a valid claim for a violation of § 1692f(1) insofar as she asserts that the Letter attempts to collect a 25% attorney's fee (and interest) which was neither agreed to by Plaintiff nor awarded through the judicial process.

It follows that Plaintiff has also stated viable claims for violations of §§ 1692e(2), (5), and (10), because the Letter seeks to collect an amount which "will be owed" by Plaintiff after the initial 30 day waiting period rather than an amount which *may* be owed after judicial proceedings be had. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 949–50 (9th Cir. 2011) (affirming ruling that demand for attorneys' fees in state court collection complaint without a basis in the parties' agreement violated both § 1692f(1) and § 1692e(2)); *DiMatteo v. Sweeney, Gallo, Reich & Bolz, LLP,* 619 F. App'x 7, 10–11 (2d Cir. 2015) ("Because the demand for attorneys' fees violates § 1692f(1), we need not address DiMatteo's argument that the demand also violates § 1692e(2)."). It is reasonable to conclude that such a mischaracterization created a false sense of urgency in Plaintiff. For these reasons, the Court finds that Plaintiff has stated a claim under the FDCPA for violations of § 1692f(1), § 1692e(2)(A), § 1692e(5), and § 1692e(10) of the FDCPA.

### 3. Failure to Identify the Current Creditor

Plaintiff next argues that Defendants violated § 1692(g)(a)(1) by failing to identify the current creditor. Section 1692g requires a debt collector, either in its initial communication with a debtor, or within five days after its initial communication with a debtor, to advise the debtor of certain information about the debt being collected upon, including (1) the amount of the debt; (2) the name of the creditor to whom the debt is currently owed; and (3) a notice, advising the consumer of her

rights to dispute the debt and receive documentation verifying the debt. 15 U.S.C. § 1692g(a); *Peter*, 310 F.3d at 348. "A debt collector violates the FDCPA by failing to provide the information required by Section 1692g(a). Merely including the required notice in letters to consumers is not sufficient. The notice must also be set forth in a form and within a context that does not distort or obfuscate its meaning." *McMurray v. ProCollect, Inc*., 687 F.3d 665, 668 (5th Cir. 2012); *Peter*, 310 F.3d at 348.

Moreover, the mere presence of the correct name in the notice somewhere does not suffice. *See Smith v. Simm Assocs., Inc*., 926 F.3d 377, 381 (7th Cir. 2019) (explaining that § 1692g(a)(2) "requires a debt collector to present information about the creditor and the debt in the manner the unsophisticated consumer can understand"); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 321 (7th Cir. 2016) ("When § 1692g(a) requires that a communication include certain information, compliance demands more than simply including that information in some unintelligible form."). And again, when evaluating a communication under the FDCPA, the Court applies the "least sophisticated consumer standard." *Gonzalez*, 577 F.3d at 603.

Prior to the enactment of the FDCPA, "[d]ebt collectors ha[d] puzzled debtors with a variety of confusing terms in purporting to identify the current creditor." *Zuniga*, 2018 WL 1519162, at *3.

> For example, some letters make confusing references to multiple non-creditor entities, rather than simply identifying the original creditor and the current creditor. *Other letters use words that are ambiguous in reporting who is the current creditor.* And still others state the name of the current creditor somewhere in the letter—but without saying that the creditor owns the debt."

*Id.* (internal citations omitted) (emphasis added).

Here, Plaintiff argues that the Letter she received is like those other letters in that it does not unambiguously identify the creditor to whom her debt is currently owed. Specifically, Plaintiff

contends that the Letter violates § 1692(g)(a) because it does not give any indication as to (1) who currently owned the debt originally incurred to Baton Rouge Cardiology, (2) whether Defendants were retained by any such creditor, or (3) what Defendants' relationship with Baton Rouge Cardiology was. (Doc. 10 at 12.) The Court agrees.

The reasoning of *Steffek* and *Anderson* is instructive here. In *Steffek*, the court found that the defendant debt collector's letter failed to clearly identify the current creditor. *Steffek v. Client Servs., Inc.,* 948 F.3d 761 (7th Cir. 2020). The court explained:

> [T]he problem for Client Services is that the form letter simply did not identify Chase Bank as the creditor to whom the debts were then owed. The heading said "RE: CHASE BANK," followed by an account number, which communicated only that the letter somehow related to the listed Chase Bank account. The body of the letter then explained that this "account has been placed with our organization for collections," referring to Client Services. Farther down, the letter said that the recipient could write to Client Services to find out if the original creditor was different from the current creditor. This latter sentence raised the possibility that the debt could have been resold, but the letter did not clarify who actually owned the debt. The letter did not communicate clearly on whose behalf Client Services was trying to collect the debt. The letter did say, however, that the recipient should pay Client Services rather than anyone else, which a recipient could reasonably understand as implying that Client Services itself was then the creditor.

*Id.* at 765.

Similarly, the court in *Anderson* denied the defendant debt collector's motion to dismiss, finding that the notice violated the FDCPA by obscuring the identity of the current creditor. *Anderson v. Ray Klein, Inc.,* No. 18-11389, 2019 WL 1568399 (E.D. Mich. Apr. 10, 2019). In that case, the defendant debt collector sent the plaintiff a letter which stated that Consumer Cellular was the "original creditor." *Id.* at *2. Although the notice listed no other creditor—no current creditor and no subsequent creditor—the court found that it did not "make abundantly clear that the debt [was] still owed to Consumer Cellular." *Id.* The court noted that the preceding sentence,

which offered to provide the plaintiff "with the name and address of the original creditor, if different from the current creditor" did nothing to clear up the confusion. *Id*. The court explained:

> The word "original," while making clear the ultimate source of the debt, also suggests that there may be a non-original creditor. Merriam Webster defines the adjective "original" as "not secondary, derivative, or imitative," or "being the first instance or source from which a copy, reproduction, or translation is or can be made." A consumer therefore might assume that there was, or is, a creditor subsequent to the original. Defendants cite cases that hold that such an interpretation would be far-fetched and unreasonable because only one creditor is mentioned on the notice.
>
> These cases don't account for the possibility that consumers might construe the notice at issue to mean that they now owe the debt only to the debt collector itself, or that Consumer Cellular has sold or otherwise divested itself of the debt. This is not an esoteric or academic source of confusion. A consumer could be convinced by a notice such as the one received by Ms. Anderson that she could no longer contest the debt with the original creditor, but must deal exclusively with Defendant. Unsophisticated consumers should not be expected to know that under the FDCPA a debt collector cannot also be a creditor. …

*Id.* at *3 (internal citations omitted). *See also Bentkowsky v. Benchmark Recovery*, Inc., No. 13-0152, 2014 WL 12579797, at *1 (N.D. Cal. Oct. 30, 2014) ("[T]he letter implies that the current creditor is someone different from the 'Original Creditor,' such as, perhaps, Benchmark itself."); *Suellen v. Mercantile Adjustment Bureau, LLC*, 2012 WL 2849651, at *6 (N.D. Cal. June 12, 2012) ("Merely naming the creditor without identifying it as the current creditor, however, has been found in violation of § 1692g(a)(2)").

The Letter in this case is similar to those described in *Steffek* and *Anderson*. It provides in relevant part:

Re: Baton Rouge Cardiology
Account Number: XXX5390
Total Amount Owed: $871.00

Dear Shelita King:

Our Firm has been retained to assist in the collection of the above referenced debt owed by you…. Payment in full should be made to:

**Kottemann Law Firm**
**PO Box 640787**
**Kenner, LA 70064-0787**

… Baton Rouge Cardiology is the original creditor for this debt…. If you request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Doc. 1-2 at 1, the "Letter".)

Like the *Anderson* court, the Court finds that "[t]hough the notice clearly establishes the source of the debt, it does not make abundantly clear that the debt is still owed" to Baton Rouge Cardiology. *See Anderson*, 2019 WL 1568399, at *2. Additionally, the sentence that says that Plaintiff can write to Defendants to find out if the original creditor is different from the current creditor "raise[s] the possibility that the debt could have been resold, [because] the letter [does] not clarify who actually own[s] the debt." *Steffek* at 765. Although the Letter explains that Defendants were retained to assist in collecting the debt owed, it does not clearly communicate on whose behalf Defendants were trying to collect the debt. *Id*. The letter does say, however, "that the recipient should pay [Defendants] rather than anyone else, which a recipient could reasonably understand as implying that [Defendant] itself was then the creditor." *Id.*

Moreover, the case relied upon by Defendants is distinguishable from the case at hand. The letter at issue in *Zuniga*, 2018 WL 1519162, "plainly identified the entity to whom the debt was owed by using the words 'Current Creditor' right next to Bureaus Investment Group Portfolio No. 15 LLC." *Id.* at *4. It also "identified the original creditor with (not surprisingly) the phrase 'Original Creditor.' " *Id.* In contrast, as discussed above, the Letter at issue here only identifies the original creditor without any mention of the current creditor. For these reasons, the Court finds that Plaintiff has stated a claim under the FDCPA for a violation of § 1692g(a)(2).

### 4. Overshadowing the Validation Notice

Finally, Plaintiff claims that Defendants violated Section 1692(g)(b). This section of the

FDCPA provides for verification of consumer debts as follows:

> If the consumer notifies the debt collector in writing within the thirty-day period
> described in subsection (a) that the debt, or any portion thereof, is disputed, or that
> the consumer requests the name and address of the original creditor, the debt
> collector shall cease collection of the debt, or any disputed portion thereof, until the
> debt collector obtains verification of the debt or a copy of a judgment, or the name
> and address of the original creditor, and a copy of such verification or judgment, or
> name and address of the original creditor, is mailed to the consumer by the debt
> collector. Collection activities and communications that do not otherwise violate
> this subchapter may continue during the 30-day period referred to in subsection (a)
> unless the consumer has notified the debt collector in writing that the debt, or any
> portion of the debt, is disputed or that the consumer requests the name and address
> of the original creditor. *Any collection activities and communication during the 30-
> day period may not overshadow or be inconsistent with the disclosure of the
> consumer's right to dispute the debt or request the name and address of the original
> creditor.*

15 U.S.C. § 1692g(b) (emphasis added).

"Although the text of § 1692g does not explicitly provide that the disclosures required by

it must be made in a non-confusing manner, courts have held that the statute implies that the

required disclosures be set forth in a form and within a context that does not distort or obfuscate

its meaning." *Peter,* 310 F.3d at 348 (internal citations omitted). "A notice is overshadowing or

contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Swift*

*v. Maximus, Inc.,* 2004 WL 1576618, at *2 (E.D.N.Y. July 15, 2004) (quoting *Russell v. Equifax*

*A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)). "Confusion can occur in a myriad of ways, such as when a

letter . . . contains logical inconsistencies [or] fails to explain an apparent inconsistency." *Pollard*

*v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 104 (1st Cir. 2014) (citing *Bartlett v. Heibl*,

128 F.3d 497, 500-01 (7th Cir. 1997)).

"In *Bartlett*, the Seventh Circuit explained that most cases in which the literal language of

§ 1692g is found to be confusing are cases in which other language in the collection letter

contradicts, appears to contradict, or overshadows the mandatory language alerting the debtor of his or her statutory rights." *Peter*, 310 F.3d at 349. Here, Plaintiff claims that Defendants violated § 1692g by unlawfully shortening the time for Plaintiff to dispute her debt by demanding payment "with in [sic] 30 days[.]" (Doc. 10 at 19; *Compl.* ¶¶ 27–29, Doc. 1.)  "Courts have generally found contradiction or apparent contradiction of the printed 1692g notice where payment is demanded in a concrete period shorter than the 30-day statutory contest period." *Peter*, 310 F.3d at 349. *See Bartlett*, 128 F.3d at 500 (demand for payment "within one week of the date of this letter" overshadowed the required notice); *see also Johnson v. Eaton*, No. 93-1081 (M.D. La. Jan. 10, 1995), 873 F. Supp. 1019, 1024.

However, Defendants did not demand payment in a "concrete period" shorter than the 30-day statutory contest period, but rather demanded payment "with in [sic] 30 days." (Doc. 1-2 at 1.) Plaintiff contends that this nevertheless shortened the statutory period by "implying that payment needed to be within 30 days of the *date of the Validation Notice*." (Doc. 10 at 19 (emphasis in original); *Compl.* ¶¶ 27–29, Doc. 1.) In support of her claim, Plaintiff relies on *Swift*, 2004 WL 1576618, at *3. However, in *Swift*, the dunning notice expressly stated that, "Payment in full of this debt must be received within 30 days *after the date of this notice* to avoid further collection activities." *Id.* at *1 (emphasis added). Here, Defendants used no such language, and thus *Swift* is distinguishable from the present case. Additionally, the words "30 days after receiving this notice" appear several times in the Letter. (*See* Doc. 1-2 at 1.) Reading it as a whole, the least sophisticated consumer would come away with the impression that she has two options at her disposal: within 30 days of the receipt of the Letter, she must either dispute the debt or pay it to avoid further collection efforts. Thus, Plaintiff has failed to state a viable overshadowing claim based on Defendants' shortening of the validation period.

Plaintiff also claims that Defendants violated § 1692g by writing, immediately following the mandatory language, "If the amount owed is not paid with in [sic] 30 days then the amount due will be owed plus reasonable attorney fees of 25% of principal and interest." (Doc. 1-2 at 1.) The effect of this language is to induce the plaintiff to pay within thirty days to avoid other potential costs. *See Johnson*, 873 F. Supp. at 1024. "[A] reasonable trier of fact could only conclude that the least sophisticated debtor would be induced to overlook and disregard his statutory right to dispute and verify the debt within 30 days." *Id.* at 1024-25. "Because the threat and incentive in the Defendants' letter contradicts and overshadows the statutory notice, the section 1692g notice was not effectively communicated to the debtor." *Id.* at 1025. Here, as in *Johnson*, the letter suggests that regardless of whether Plaintiff disputed the debt, if she did not pay the amount alleged to be owed, she would incur additional debt. This overshadows her statutory right to dispute the debt at the peril of adding to it.

The Court recognizes that " 'letters [that] encourage debtors to pay their debts by informing them of the possible negative consequences of failing to pay[]' . . . do not overshadow the required notice language." *McMurray,* 687 F.3d at 671 (quoting *Durkin v. Equifax Check Servs., Inc.,* 406 F.3d 410, 417-18 (7th Cir. 2005)). "This is because 'one way to encourage someone with a true dispute to come forward and resolve that dispute is to inform him of the possible negative consequences of continued inaction.' " *Id.* However, the Letter in this case does far more than merely inform Plaintiff of possible negative consequences of failing to pay. As discussed *supra* herein, it attempts to collect a nonexistent debt from her. Because the Letter threatens to collect, if the amount is not paid within 30 days, sums from Plaintiff to which Defendants are not entitled under any agreement or provision of law, the Letter contradicts and overshadows the mandatory notice. Therefore, she has stated a claim for overshadowing based on this provision of the Letter.

### 5. Equitable Relief

Finally, Defendants argue that Plaintiff's demand for declaratory and injunctive relief is futile because equitable relief is not available to private litigants under the FDCPA. (Doc. 8-1 at 16.) Plaintiff fails to address her claims for declaratory and injunctive relief under the FDCPA in her opposition. Plaintiff's failure to provide a substantive argument in her opposition is essentially a waiver and justifies dismissal by itself. *See JMCB, LLC v. Bd. of Commerce & Indus.,* 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("Plaintiff did not respond to the substance of any of SPL's arguments.... On this ground alone, the Court could dismiss Plaintiff's Amended Complaint." (numerous citations omitted); *see also Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London,* 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (deGravelles, J.) (finding that, because plaintiff failed to respond to defendant's argument on an issue, the Court could conclude that a policy exclusion applied (citing, *inter alia*, *JMCB*, 336 F. Supp. 3d at 634)).

Even looking beyond that waiver, the Court finds the caselaw cited to by Defendants to be persuasive. Although the Fifth Circuit has not directly addressed the issue of whether a FDCPA private litigant can obtain equitable remedies, consistent with the holdings of other district courts within the Fifth Circuit, this Court declines to depart from the majority rule that the FDCPA does not provide equitable relief. *See Goode v. Adler Wallach Associates Inc.*, 2017 WL 3437900, at *3 (E.D. Tex. Aug. 10, 2017) (finding that plaintiff's claims for equitable relief were unavailable legally, irrespective of Plaintiff's factual allegations); *Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, 2014 WL 7330602, at *3 (E.D. La. Dec. 18, 2014); *Sibley v. Diversified Collection Servs., Inc.*, 1998 WL 355492, at *5 (N.D. Tex. June 30, 1998). Therefore, Plaintiff's claims for injunctive and declaratory relief are dismissed with prejudice. *See Marucci Sports, LLC*

*v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("[d]enying a motion to amend is not an abuse of discretion if allowing an amendment would be futile.").

### V.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 8) filed by Defendants Kottemann Law Firm and Stanley Kottemann, Jr. is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that with respect to Plaintiff's claim under 15 U.S.C. §1692g, the motion is **GRANTED** insofar as Plaintiff alleges that the letter artificially shortened the 30-day statutory contest period.

It is also **GRANTED** in that Plaintiff's claims for declaratory and injunctive relief are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion is **DENIED** in all other respects.

Signed in Baton Rouge, Louisiana, on March 30, 2021.


**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**