## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ERICKA BANKS,**
**individually and on behalf of**
**all others similarly situated**

**CIVIL ACTION**

**VERSUS**

**NO. 19-375-JWD-EWD**

**KOTTEMANN LAW FIRM**

### CONSOLIDATED WITH

**SHELITA KING,**
**individually and on behalf of**
**all others similarly situated**

**CIVIL ACTION**

**VERSUS**

**NO. 20-340-JWD-EWD**

**KTTEMANN LAW FIRM, ET AL.**

### <u>RULING AND ORDER</u>

This matter comes before the Court on the *Motion to Set Aside Clerk's Entry of Default and to Compel Arbitration* (Docs. 16, 41) filed by Defendant Kottemann Law Firm ("Defendant"). Plaintiff Ericka Banks ("Plaintiff") opposes the motion.[1] (Docs. 22, 42.)  Defendant has filed a reply. (Doc. 27.) Oral argument is not necessary.  The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule.  For the following reasons, Defendant's motion is denied.

---

[1] After this case was consolidated with *King v. Kottemann Law Firm*, No. 20-cv-340-JWD-EWD on November 30, 2020, Defendant re-submitted its previous *Motion to Set Aside Clerk's Entry of Default and to Compel Arbitration* on December 3, 2020, causing Doc. 16 to become Doc. 41. Plaintiff also resubmitted her Opposition on December 24, 2020 causing Doc. 22 to become Doc. 42. Defendant did not re-submit its Reply. The most recent document in the record will be used as the reference.

## I.    Background

### A.  Overview

This is a putative class action brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Defendant is Kottemann Law Firm, a Louisiana company that uses mail, telephone, or facsimile in a business, the principal purpose of which is the collection of debts. (*Compl.* ¶¶ 8–10, Doc. 1.) Plaintiff is a Louisiana resident (*id.* ¶ 7) who allegedly incurred an obligation to First Heritage Credit of Louisiana, LLC ("FHC") (*id.* ¶ 12).  Thereafter, FHC "or a purchaser, assignee, or subsequent creditor" contracted with Defendant to collect on the alleged debt owed. (*Id.* ¶ 16.) In connection with this debt, on December 17, 2018, Defendant sent Plaintiff a collection letter.[2]  (*Id.* ¶ 18.)

Based on this letter, Plaintiff brings three causes of action against Defendant, alleging that Defendant's debt-collection practices violated various provisions of the FDCPA. Specifically, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692(e) by falsely representing the amount of the debt, threatening to take action that cannot legally be taken or that is not intended to be taken, and using false, deceptive and misleading representations in connection with the collection of a debt, (*id*. ¶¶ 44–48); 15 U.S.C. § 1692(f) by attempting to collect an amount not expressly authorized by the agreement creating the debt or permitted by law, (*id*. ¶¶ 49–53); and finally, 15 U.S.C. § 1692(g) by overshadowing the validation notice (*id*. ¶¶ 54–57).

---

[2] The collection letter in *King* is identical to the one in *Banks*. Likewise, both plaintiffs bring identical claims under the FDCPA. For an in-depth description of the collection letter and Plaintiff's claims, see this Court's Ruling on Defendant's Motion to Dismiss in *King*, issued on March 30, 2021 (Doc. 50).

Plaintiff seeks, *inter alia*, declaratory and injunctive relief, actual and statutory damages, attorney's fees, and any other relief this Court "may deem just and proper." (*Id.* ¶ 6; *see also* Doc. 1 at 11.)

**B. Procedural History**

On June 10, 2019, Plaintiff filed her class action *Complaint* against Defendant. (Doc. 1.) On June 11, 2019, a summons was issued to Defendant and a Scheduling Conference was set for August 8, 2019. (Docs. 2, 3.)  On June 29, 2019, Defendant was served personally through its registered agent, owner, and principal attorney, Stanley Kottemann. (Doc. 6.) Defendant's answer was due by July 22, 2019. (*Id.*) Due to Defendant's failure to submit an answer by that date, on July 24, 2019, the Court reset the Scheduling Conference for September 5, 2019. (Doc. 7.)

On August 20, 2019, Plaintiff moved for the *Clerk's Entry of Default*. (Doc. 8.) On August 21, 2019, the *Clerk's Entry of Default* was entered. (Doc. 9.) On that same day, Plaintiff submitted a status report and a request to cancel the September 5, 2019 Scheduling Conference. (Doc. 10.)

On August 23, 2019, the Court cancelled the Scheduling Conference and requested a status report by November 25, 2019. (Doc. 11.) On September 26, 2019, Plaintiff filed a *Motion for Leave to Conduct Discovery and to Waive the Meet-and-Confer Requirements of FRCP 26(f), Due to Defendant's Refusal to Participate in This Action*. (Doc. 12.)

On December 5, 2019, the Court granted Plaintiff's motion and directed Plaintiff's counsel to submit proposed discovery demands to the Court for review by December 20, 2019. (Docs. 13, 14.) On January 13, 2020, the Court permitted Plaintiff to propound discovery on Defendant after modifying the proposed discovery. (Doc. 15.)

On May 8, 2020, Defendant filed a *Motion to Set Aside Clerk's Entry of Default and to Compel Arbitration.* (Doc. 16.) On May 28, 2020, Plaintiff filed an opposition. (Doc. 22.) On June 22, 2020, Defendant filed a reply. (Doc. 27.)

On November 30, 2020, the *King* case was transferred to this Court and consolidated with the instant case upon Defendant's motion. As Judge Jackson explained in his Ruling and Order on the motion to consolidate, "both actions [were] filed on behalf of Louisiana consumers under the [FDCPA]. Both actions involve the same attorneys, the same Defendant[], functionally the same claims, a request for class certification, and call for the same relief."[3] (*King*, No. 20-340, Doc. 19 at 1–2.)    Thereafter, Defendant re-submitted its original motion and accompanying brief and Plaintiff re-submitted her opposition. (*See* Docs. 41, 42.) Defendant did not re-submit its reply.

## II.    Parties Arguments

### A.  Defendant's Memorandum (Doc. 41-1)

In support of its motion, Defendant argues that the entry of default should be set aside for "good cause" shown under Federal Rule of Civil Procedure 55(c).  Defendant first points out that the default entry will only have a limited effect if it is not set aside. (Doc. 41-1 at 6–7.) According to Defendant, a default entry is not an unqualified admission of liability; it does not establish the amount of damages; and it does not admit facts in the Complaint that are not well-pleaded. (*Id.* at 7.) Therefore, even if the default entry is not set aside, Defendant can still contest the sufficiency of the Complaint. (*Id.*).

Next, Defendant urges the Court to set aside the default entry because all three of the factors set forth in *Lacy v. Sitel Corp.*, 227 F.3d 290, 291–92 (5th Cir. 2000) are met. (*Id.* at 8.) Defendant first contends that its default was not willful. (*Id.* at 9.) In support of this contention, Defendant

---

[3] In *King,* both Kottemann Law Firm and Stanley Kottemann are named as defendants; however, in this case, only Kottemann Law Firm is named as a defendant.

relies on the affidavit of Mr. Kottemann (hereinafter "Kottemann Aff.," Doc. 41-3), who attests that: (1) on June 29, 2019, "an unknown individual dropped a summons and complaint" on his car (*id*. ¶ 5); (2) he then "promptly notified FHC of the complaint" (*id*. ¶ 6); (3) thereafter, he was "repeatedly assured by FHC that [it] 'will take care of' the complaint," which he "reasonably understood" to mean that FHC had taken or would take action to resolve the matter directly with Plaintiff either by demanding arbitration or settling (*id*. ¶¶ 8–9); (4) he reached out to FHC's legal representative after receiving emails from Plaintiff's counsel, but "again" was reassured by FHC that it was handling the matter (*id*. ¶ 9); (5) after receiving discovery from Plaintiff's counsel, he "began to attempt to inquire further with FHC" about the status of the case, but was unable to reach FHC's representatives due to COVID-19 (*id*. ¶ 10); (6) "upon investigation" he learned of the Clerk's entry of default and engaged the services of legal counsel (*id*. ¶ 11); and (7) he followed all legal and ethical guidelines in handling this matter (*id*. ¶ 12).   (Doc. 41-1 at 9.) Thus, "Defendant's failure to respond was not due to bad faith, an attempt to take advantage of the Plaintiff, or an attempt to interfere with the legal process." (*Id*.)

Second, Defendant avers that its default has not legitimately caused delay or increased Plaintiff's legal fees. (*Id*. at 10.) Further, "Plaintiff cannot complain about losing any right to a jury trial because there is no recognized right to a jury trial in FDCPA cases" in the Fifth Circuit. (*Id*. at 11 (citing *Moore v. Frazier*, 35 Fed. Appx. 386 (5th Cir. 2002) (unpublished)).)

Third, Defendant presents three "meritorious defenses" to Plaintiff's claims: (1) that there is a binding arbitration agreement; (2) that Plaintiff lacks standing; and (3) that Plaintiff's claims are subject to dismissal under Rule 12(b)(6). (*Id*. at 11–21.) Accordingly, this factor also weights in favor of setting aside the default. (*Id*. at 21.)

Finally, the "most important discretionary factor that the Court considers is the fact that the Defendant is ready and willing to arbitrate and only if necessary, litigate the case on its merits." (*Id*.)

In closing, Defendant notes that because it provided a reasonable explanation for its untimely response, there is no injustice to Plaintiff, and it has demonstrated meritorious defenses, good cause exists to set aside the Clerk's Entry of Default. (*Id*. at 22.) Moreover, given that there is only an entry of default, relief in this case should be "more readily granted than a motion to set aside a default judgment." (*Id*. at 21 (quoting *In re Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992)).) As such, the entry of default should be vacated, Defendant's request for arbitration should be granted, and this case should be stayed pending the outcome of arbitration. (*Id*. at 22.)

### B. Plaintiff's Opposition (Doc. 42)

In opposition, Plaintiff argues that the Court should not set aside the default entry because "Defendant's default was both willful and intentional." (Doc. 42 at 11.) In broad strokes, the crux of Plaintiff's argument is as follows:

> The plain and simple facts of this case demonstrate that the Kottemann Law Firm decided to ignore this case at every stage of the litigation. It decided to ignore the Complaint personally served on it. It decided to ignore the Plaintiff's July 30 and August 13 emails, each warning that a default would be entered if the Defendant failed to interpose a response to the Complaint. It decided to ignore the August 21, 2019 Clerk's Entry of Default. It decided to ignore the Plaintiff's Status Report and subsequent Motion to Conduct Class Discovery. It decided to ignore the class discovery demands and deposition served on it. In short, the Kottemann Law Firm willfully, intentionally and consciously decided to default in this case. Now that it realized that its head-in-the-sand strategy had backfired, the Kottemann Law Firm seeks to vacate its default, basing its Motion on an excuse that is demonstrably and abjectly false.

(*Id*. at 29.) Plaintiff then takes issue with Defendant's proffered excuse for failing to take any action in this case. (*Id*. at 12.) Although Defendant claims it thought FHC was handling the case,

and that it believed FHC had settled with Plaintiff or entered arbitration, this "excuse" cannot withstand judicial scrutiny for two reasons.

First, the record demonstrates that Defendant was acutely aware at every stage in these proceedings that Plaintiff's claims were not settled or being arbitrated. (*Id*. at 15.) As detailed in the declaration submitted by Plaintiff's counsel (hereinafter "Zelman Dec.," Doc. 42-1), Mr. Zelman called, emailed, and wrote to Mr. Kottemann at every step in this litigation. (*Id*. at 12–13.) Attached to Mr. Zelman's declaration are copies of two emails sent to Defendant before Plaintiff moved for an entry of default: one on July 30, 2019, and the other on August 13, 2019. (*See* Docs. 42-2, 42-3.) Mr. Kottemann acknowledges receiving these emails in his affidavit. (*Id*. (citing Kottemann Aff., Doc 41-3).) Thus, Plaintiff reasons that "any misconceptions Mr. Kottemann had about this litigation were clearly set straight when he was twice warned about the impending default on July 30 and August 13." (*Id*. at 15.)  Plaintiff also points out that Mr. Kottemann could have "easily" checked the docket to see if the case was settled or in arbitration, before choosing to let a default be entered. (*Id*. at 15 n.2, n.3.) Plaintiff then cites to analogous cases wherein similar excuses were insufficient to establish "good cause" to set aside an entry of default. (*Id*. at 13–15.)

Second, Plaintiff emphasizes that Defendant is not some unsophisticated party unaware with the litigation process. Instead, Defendant is a law firm, and Mr. Kottemann is an attorney with over twenty years of experience. (*Id*. at 7, 17.) Plaintiff cites to *Fed. Sav. & Loan Ins. Corp. v. Kroenke*, 858 F.2d 1067 (5th Cir. 1988) which demonstrates that when the defaulting party is an attorney, his professional knowledge—especially as it relates to deadlines—may be taken into account when determining whether his default was willful. (*Id*. at 17.)

In *Kroenke*, the defendant-attorney moved to vacate a default judgment one day after it was entered, "claiming he believed that he had an informal arrangement with opposing counsel that no

7

default would be sought while settlement negotiations were ongoing." (*Id*. at 16–17.) The district

court denied the defendant's motion and the Fifth Circuit affirmed:

> It is clear to us that the defendant's argument here that his reliance on vague understandings with FSLIC resulted in "surprise" or "excusable neglect" is meritless. Kroenke himself was an attorney, and whatever may have been his agreement with opposing counsel, he offers no reason, explanation or justification for ignoring the express admonition of the district court to file a responsive pleading within ten days or have a preliminary entry of default entered against him….

> Furthermore, Kroenke's argument that he has demonstrated the "good cause" required under Rule 55(c) by showing that he was somehow misled by opposing counsel, fails because Kroenke was explicitly directed by the court on July 6, 1987 to file a responsive pleading with the court within ten days. As an attorney, Kroenke knew what was expected of him and has no excuse for not following the express instruction of the court. Thus[,] it is clear to us that the district court did not abuse its discretion in rejecting Kroenke's "good cause" argument and entering an order of default against him.

(*Id*. at 16–17 (quoting *Kroenke*, 858 F.2d at 1070–71).)

Plaintiff represents: If the *Kroenke* defendant's excuse—premised on a supposed

misunderstanding with opposing counsel—was "insufficient 'excusable neglect' to warrant a

finding of 'good cause' under FRCP 55(c), the Defendant's excuse here is *a fortiori* insufficient

as a matter of law, because Defendant cannot claim any such basis for completely ignoring the

repeated warnings that a default would be entered against it." (*Id*. at 17; *see also id*. at 18 (citing

*In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576, 595 (5th Cir. 2014) (claim

by Chinese corporate defendant that it was unfamiliar with U.S. litigation practice was insufficient

to constitute "excusable neglect"); *Simon v. Pay Tel Mgmt., Inc.,* 952 F.2d 1398, at *6–7 (7th Cir.

1992) (finding no "excusable neglect" where a party willfully, albeit through ignorance or

carelessness, abdicates its responsibilities to the court)).)

Plaintiff also points out that Defendant was willful as evidenced by its lack of prompt action

and continued ignorance of this case, despite Plaintiff's repeated attempts at communication. (*Id*.

at 19.) Rather than promptly moving to vacate the default entry, Defendant was content with letting "Plaintiff and the Court expend judicial resources on Plaintiff's requests to conduct class discovery." (*Id*.)

For these reasons, Defendant's default was "clearly willful" and intentional. (*Id*. at 18.) Thus, in accordance with Fifth Circuit precedent, this factor alone is dispositive of Defendant's motion. (*Id*. at 18–19 (citing *Cooper v. Faith Shipping,* 2010 WL 2360668, at *14 (E.D. La. June 9, 2010); *Matter of Grabanski*, 691 F. App'x 159, 164 (5th Cir. 2017) ("Keeleys' intentional decision not to object to the default proceedings was not justified. This finding of willful default ends the inquiry.")).) Nevertheless, Plaintiff still address why Defendant's "meritorious defenses" have no merit. (*Id*. at 20–28.)

In conclusion, Plaintiff notes that Defendant made a choice to willfully ignore this case for almost a year—despite being on actual notice of its default—therefore it should not be allowed to rely on the general policy in favor of resolving cases on their merits for relief in this case. (*Id.* at 29.)

### C.  Defendant's Reply (Doc. 27)

In response, Defendant reiterates that it has shown good cause to set aside the entry of default because: (1) its failure to respond was not willful, (2) Plaintiff has not been harmed, and (3) it has demonstrated viable defenses.

As to the first factor, the Court should find that Defendant's failure to respond to a "groundless lawsuit was at least understandable and excusable under these circumstances." (Doc. 27 at 4.) In support of this argument, Defendant cites to *Voyles v. Superior Staffing LLC*:

> In *Voyles,* the district court found that the defendant's failure to respond to a lawsuit was not willful "under the lenient Rule 55(c) standard" though he knew about the lawsuit, he had in fact corresponded with plaintiff's counsel prior to the entry of default and where, as here, the defendant "assumed his retained counsel was handling all related matters, including the instant case…." *Id.* Although Mr.

> Kottemann is an attorney, he at least initially reasonably relied upon his client, FHC, to handle this matter.

(*Id*. (quoting *Voyles v. Superior Staffing LLC*, 2019 WL 6516649, at *2 (W.D. La. Dec. 3, 2019)).)

Defendant next re-urges that Plaintiff has not been prejudiced as there is no claim that any evidence has been lost. (*Id*. at 5.) While Plaintiff "bemoans supposed 'countless letters, emails and phone calls from Plaintiff's counsel,' and a claimed expenditure of a 'significant amount of time and effort litigating this case,' " prior to Defendant's motion, there were only 15 docket entries (the *Complaint*, three motions, a status report, the *Clerk's Entry of Default*, and two Orders). (*Id*.) Defendant further represents that Plaintiff's counsels "strenuous effort" claims ring hollow. (*Id*. at 6.) According to Defendant, Plaintiff's counsel has been found by other courts to be someone who regularly files " 'gotcha' FDCPA 'technical violation cases' like this one all over the country." (*Id*. at 5–6 n.17, n.18 (numerous citations omitted).)

Finally, Defendant argues that it "has made a 'clear and specific showing ... by [a] definite recitation of facts that [it] has a valid defense.' " (*Id*. (quoting *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 122 (5th Cir. 2008)).) Therefore, Defendant concludes that its excuse for the delay, the lack of prejudice to Plaintiff, and the existence of meritorious defenses are sufficient for the Court to set aside the entry of default under Rule 55(c)'s lenient standard. (*Id*. at 8.)

## III. Discussion

### A. Applicable Law

According to Rule 55(c) of the Federal Rules of Civil Procedure, a court may set aside an entry of default for good cause shown. Fed. R. Civ. P. 55(c); *Dierschke*, 975 F.2d at 183. "The decision to set aside a default decree lies within the sound discretion of the district court." *U.S. v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985) (citation omitted). However, courts "universally favor trial on the merits." *Dierschke*, 975 F.2d at 183 (quoting *Bridoux v. Eastern Air*

*Lines, Inc.*, 214 F.2d 207, 210 (D.C. Cir. 1954)). In addition, motions to set aside a default are more readily granted than motions to set aside a default judgment. *Id.* at 184; *One Parcel*, 763 F.2d at 183 ("Although a motion to set aside a default decree under Fed. R. Civ. P. 55(c) is somewhat analogous to a motion to set aside a judgment under Fed. R. Civ. P. 60(b), the standard for setting aside a default decree is less rigorous than setting aside a judgment for excusable neglect.") (citations omitted).

In deciding whether a defendant has shown good cause, "courts consider three *non-exclusive* factors: 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.' " *Koerner v. CMR Constr. & Roofing, LLC*, 910 F.3d 221, 225 (5th Cir. 2018) (quoting *Lacy*, 227 F.3d at 292) (emphasis added); *see also Sindhi v. Raina*, 905 F.3d 327, 332 (5th Cir. 2018) (outlining the same factors). Other factors, such as whether the party acted expeditiously to correct the default, may also be considered. *Effjohn Intern. Cruise Holdings Inc v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003). However, the Court need not consider all of the factors in reaching a determination. *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008) (quoting *Dierschke*, 975 F.2d at 183 (finding the factors should be treated in the disjunctive)). And "[t]he ultimate inquiry remains whether the defendant shows 'good cause' to set aside the default." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (citing *Dierschke*, 975 F.2d at 184).

Pertinent to this case, "[a] finding of willful default ends the inquiry[.]" *In re Chinese Manufactured*, 742 F.3d at 594 (quoting *Lacy*, 227 F.3d at 292); *Dierschke*, 975 F.2d at 184–85 ("Willful failure alone may constitute sufficient cause for the court to deny [the defendant's] motion"). A "willfulness" inquiry is whether the neglect is excusable. *Effjohn,* 346 F.3d at 563 (citing *CJC Holdings,* 979 F.2d at 64). Excusable neglect is an " 'elastic concept' and is not limited

strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.,* 507 U.S. 380, 392 (1993). The term "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* at 388.

"The defendant has the burden of showing by a preponderance of the evidence that its neglect was excusable, rather than willful." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 500–01 (5th Cir. 2015) (citation omitted). Thus, when a defendant fails to explain the reason for its delay, a willful default is presumed. *Id.* at 501. Where a reason is offered, "perfection of service is not determinative – the defendant's knowledge of the perfected service, and the defendant's actions post-service ... play a role in measuring the willfulness of [the] default." *Jenkens & Gilchrist*, 542 F.3d at 123.

"While it appears the Fifth Circuit has not provided clear guidance on what type of conduct rises to the level of a willful failure to respond, it has provided guideposts for a court to make this determination." *Welch v. State Farm Mut. Auto. Ins. Co*., No. 18-208, 2019 WL 2016537, at *3 (N.D. Miss. May 7, 2019) (motion to set aside default entry). "For example, it is clear that a litigant willfully defaults when it receives notice of a lawsuit but takes 'no further action to respond or stay abreast of the status of the litigation....' " *Id*. (quoting *UnitedHealthcare Ins. Co. v. Holley*, 724 F. App'x 285, 288 (5th Cir. 2018)). This rule applies even if the defendant erroneously believes the complaint does not require an answer. *Id*. (citing *Dierschke*, 975 F.2d at 184). In contrast, a defendant does not act willfully when, despite its belief that no answer is required, it takes actions consistent with an intention to defend or resolve the suit. *See Lacy*, 227 F.3d at 292–93 (no willful default where "counsel for [defendant] made repeated contacts with [plaintiff] in an attempt to resolve the suit" and "made plain its intention not to agree to waiver of service"); *see also Jenkens*

12

*& Gilchrist*, 542 F.3d at 123–24 ("As the record reflects her contemporaneous intent to claim ownership of the Williamsburg residence, it would be quite strange for [the defendant] to willfully default when doing so would destroy her interest in the home.").

### B.  Analysis

After carefully considering the record, counsel's briefs and supporting documents, the Court finds that Defendant's default was willful. Based on the docket entries and Plaintiff's counsel's declaration, it is evident that Defendant had notice of this suit and the default entered against it and nevertheless chose not to respond. The affidavit proffered by Mr. Kottemann does nothing to dispel this.

For example, in his affidavit, Mr. Kottemann admits to being served with the Complaint on June 29, 2019, yet Defendant took no action in response. (Kottemann Aff., Doc. 41-3 at ¶ 5; *see also* Docs. 6, 7.) Indeed, Defendant's failure to answer the Complaint or otherwise respond to this lawsuit prompted Plaintiff to seek an entry of default against Defendant on August 20, 2019. (Doc. 8.)

Before doing so, Plaintiff's counsel twice warned Defendant that if it continued to not respond, then Plaintiff would seek an entry of default against it. (*See* July email, Doc. 42-2 at 1 ("Mr. Kottemann: Due to your firm's failure to answer, we will be moving forward for a default shortly. Please feel free to reach out to me if you would like to discuss before hand."); August email, Doc. 42-3 at 1 ("Mr. Kotteman: I again called your office today, but have yet to hear back. We will note in our moving papers that we attempted to reach out to you on July 30th via email and phone, and today via email and phone, but were ignored.").) Mr. Kottemann admits to receiving these emails in his affidavit, yet Defendant did nothing. (Kottemann Aff., Doc. 41-3 at ¶ 9; Doc. 42-4 at 1.)

After default was entered on August 21, 2019, Plaintiff filed a status report with the Court saying as such and emailed Mr. Kottemann to let him know that default had been entered against Defendant. (*See* Zelman Dec., Doc. 42-1 at 2–3; Docs. 9, 10.) Again, Defendant did nothing.

Despite Mr. Kottemann's actual knowledge of this suit and the default entry, Defendant took no action in this case until May 8, 2020—almost one year after Defendant was served with the Complaint and over eight months after default was entered. (Doc. 16.) Nevertheless, Defendant argues that the Court should excuse this delay because it was not intentional. Defendant contends that although Mr. Kottemann is an attorney, he at least "initially reasonably relied upon FHC" to handle this matter. (Doc. 27 at 4.) The Court disagrees.

As Plaintiff correctly contends, Defendant is a law firm and Mr. Kottemann is an attorney who has been practicing law for over 20 years. (*See* Doc. 42 at 7, 17.) For Mr. Kottemann to swear that he "reasonably believed" that FHC was handling this case by directly settling with Plaintiff or demanding arbitration defies logic. (Kottemann Aff., Doc. 41-3 at ¶¶ 8–9.)

FHC is not a party to this suit. Kottemann Law Firm is the only defendant named in this action. A simple reading of the Complaint demonstrates that this suit is brought against Defendant based on Defendant's alleged violations of the FDCPA. (*See* Doc. 1.)  Additionally, the language in Plaintiff's counsel's July 30, 2019 email makes it clear that the suit is against Defendant, not FHC. Again, that email states in relevant part: "Mr. Kottemann: Due to *your firm's* failure to answer, we will be moving forward for a default shortly…." (July email, Doc. 42-2 at 1 (emphasis added).)

Also, notably absent from Mr. Kottemann's affidavit and Defendant's briefing is any indication that Mr. Kottemann took any steps to keep himself abreast of this litigation. Mr. Kottemann's "reasonable belief" that FHC was handling this case either by settling with Plaintiff

or demanding arbitration could have been dispelled by checking the docket. *See e.g., James v. City of Jersey City,* 187 F.R.D. 512, 518 (D.N.J. 1999) ("[T]he default was the result of D'Agosta's culpable conduct. Default was not entered against D'Agosta until almost nine months after his answer was due. D'Agosta has not presented any evidence that he inquired once into the status of his case during that time or that he made any effort to ensure that an answer had been filed on his behalf or that his attorney continued to represent him. D'Agosta's inaction and disregard for this action constitute culpable conduct"); *J&J Sports Prods., Inc. v. Hnos Adame Corp.*, 2017 WL 728311, at *4 (N.D. Tex. Jan. 23, 2017) (noting that "a party has a duty of diligence to inquire about the status of a case").

There is no excuse for this conduct, much less a reasonable one. On this point, *Dierschke* is illustrative. There, the Fifth Circuit noted both the defendant and his counsel were served with the complaint and summons. *Dierschke*, 975 F.2d at 183 (discussing a motion to set aside a clerk's entry of default). Further, defendant's counsel testified that he discussed the complaint with the defendant before the answer was due but nonetheless declined to file an answer. *Id.* at 184. Thus, the Fifth Circuit concluded the lower court did not abuse its discretion in declining to set aside the clerk's entry of default. *Id.* at 184–85. *In re Chinese Manufactured* is similar albeit in the default-judgment context. There, the corporate defendant was served with the first amended complaint but waited almost a year later to file an appearance. *In re Chinese Manufactured*, 742 F.3d at 582–83. The Fifth Circuit concluded the district court did not abuse its discretion by refusing to vacate the default judgment. *Id.* at 595. *See also, In re Whelan*, 582 B.R. 157, 176–77 (Bankr. E.D. Tex. Feb. 16, 2018) ("In this case, the Defendant elected, at least with regard to this particular adversary proceeding, to forego any such prompt participation. He was promptly served with the complaint and summons. He elected not to respond. He was notified that an entry of default had been entered

15

against him. He intentionally ignored it. He was served with the motion for default judgment. He did nothing. Yet he now wants to complain that he did not get to participate and bemoans how the entry of a default judgment against him is fundamentally unfair—though he alone is responsible….With that background, there is no sound public policy that is promoted by rewarding the Defendant for his intransigence over a period of 18 months."); *Commerce Bank & Trust Company v. Ria LLC*, 314 F.R.D. 338 (D. Mass. Feb. 3, 2016) (vacating default was unwarranted when defaulting party was an attorney who did not deny service and knowledge of the suit and nearly eight months passed between the entry of default and the filing of the motion to vacate); *Porter v. Brancato*, 171 F.R.D. 303, 304 (D. Kan. 1997) (defendant's failure to timely answer or otherwise respond to the plaintiff's complaint, after receiving actual notice of the complaint, demonstrated willful and flagrant disregard for the court constituting culpable conduct, and the default entered would not be set aside); *Conetta v. Nat'l Hair Care Ctrs., Inc.*, 186 F.R.D. 262, 269 (D.R.I. 1999), *judgment aff'd*, 236 F.3d 67 (1st Cir. 2001) (no good cause shown to vacate default entry where the defendant was a sophisticated business man who chose to ignore the lawsuit in bad faith and with no reasonable explanation and waited more than four months after default entry to even hire a lawyer); *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 251-253 (7th Cir. 1990) (affirming the district court's refusal to set aside entry of default and entry of judgment where plaintiff twice threatened to move for default if an answer was not forthcoming).

Like the defaulting parties in the above cases, Defendant in this case admitted to being served with the Complaint, but it took "no further action to respond or stay abreast of the status of the litigation...." *UnitedHealthcare*, 724 F. App'x at 288. Defendant's actions following its receipt of the Complaint and the notice of entry of default demonstrate a true dereliction of its "duty of

diligence to inquire about the status of [its] case." *Id.* (citing *Pryor v. U.S. Postal Service*, 769 F.2d 281, 287 (5th Cir. 1985)). The Court does not condone such behavior.

Despite being served with the Complaint in June of 2019 and having knowledge of the default in August of 2019, Defendant waited over eight months from the entry of that default and almost an entire year before making its first appearance in this case and moving to set the default aside. (Doc. 16.) The only excuse it provided for this delay is akin to no excuse at all. Thus, the record clearly demonstrates that the default was willful and intentional. In accordance with Fifth Circuit precedent, this Court pretermits a discussion of the other "non-exclusive good cause" factors and finds Defendant's willful behavior to be dispositive of the instant motion. *In re Chinese Manufactured*, 742 F.3d at 594; *Lacy*, 227 F.3d at 292.

Further, as the Fifth Circuit has explained, a party who has defaulted must succeed in setting aside the default entry before they can file motions that go to the merits of the case. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996). As such, the Court denies Defendant's motion to compel arbitration, to dismiss for lack of standing, and to dismiss for failure to state a claim. Defendant's motion for leave to file an answer and affirmative defenses is likewise denied. *New York Life Ins.*, 84 F.3d at 143 ("Only if a Rule 55(c) motion is made, and granted, will Alvin be allowed to file an answer."); *Serv. Janitorial, LLC v. Talbot*, No. 8-685, 2009 WL 10677607, at *4 (E.D. Tex. Jan. 22, 2009) ("[T]he effect of the entry of default is that it cuts off the Defendant's right to appear in the case with respect to liability issues. Because the Defendants did not appear prior to the Clerk's entry of default, they were not entitled to file substantive motions unless and until the entry of default was set aside. The court will therefore deny without prejudice Defendants' motions to dismiss and compel arbitration…"); *Twist and Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 783 (E.D. Tex. 2006); *J&J Sports Prods., Inc. v. Pei Chuan*

*Kuo*, No. 7-075, 2007 WL 4116209, at *3 (W.D. Tex. Nov. 15, 2007)); *see also Thomas v. Culpepper*, No. 18-814, 2019 WL 6037992, at *3 n.4 (E.D. Tex. July 29, 2019), *report and recommendation adopted*, No. 18-814, 2019 WL 4564837 (E.D. Tex. Sept. 20, 2019); *Ocwen Loan Servicing, LLC v. Heiberg*, No. 17-690, 2018 WL 5728526, at *2 (E.D. Tex. Sept. 18, 2018), *report and recommendation adopted*, No. 17-690, 2019 WL 298210 (E.D. Tex. Jan. 16, 2019); *United States v. Poole*, No. 17-0373, 2017 WL 6731718, at *3 (S.D. Ala. Dec. 28, 2017); *Great Am. Ins. Co. v. Goin*, No. 15-75, 2015 WL 11121356, at *3 (N.D. Tex. Dec. 16, 2015); *Cohen v. Rosenthal*, No. 15-1043, 2015 WL 7722391, at *2 n.2 (D. Conn. Nov. 30, 2015); *Mid-Central Ill. Reg'l Council of Carpenters v. Con-Tech Carpentry LLC*, No. 14-3293, 2015 WL 12802605, at *3 (C.D. Ill. Feb. 9, 2015); *HEI Res., Inc. v. Evans*, No. 9-124, 2011 WL 13249409, at *1 (S.D. Tex. Jan. 4, 2011).

## IV.     Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Set Aside Clerk's Entry of Default and to Compel Arbitration* (Docs. 16, 41) filed by Defendant Kottemann Law Firm is **DENIED**.

Signed in Baton Rouge, Louisiana, on March 31, 2021.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**